UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PRISCILLA THOMAS,

     Plaintiff,

v.                                  Case No: 8:15-cv-1883-T-JSS

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## ORDER

     Plaintiff, Priscilla Thomas, seeks judicial review of the denial of her claims for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") benefits. As the Administrative Law Judge's ("ALJ") decision did not employ proper legal standards, the decision is reversed in part.

## BACKGROUND

### A.    Procedural Background

     Plaintiff filed applications for DIB and SSI on May 19, 2014. (Tr. 209–18.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 69–120.) Plaintiff then requested an administrative hearing. (Tr. 145–46.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 25–66.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and, accordingly, denied Plaintiff's claims for benefits. (Tr. 8–24.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 1–8, 67–68.) Plaintiff then timely filed

a complaint with this Court.  (Dkt. 1.)  The case is now ripe for review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

**B.     Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1961 and has a high school education, claimed disability beginning on January 15, 2014.  (Tr. 34–35, 209–18.)  Plaintiff's past relevant work experience included work as a survey worker, telephone solicitor, telephone answering service operator, personal recruiter, and appointment clerk.  (Tr. 17, 61–63.)  Plaintiff has not performed substantial gainful activity since January 15, 2014, her alleged onset date.  (Tr. 13.)  Plaintiff alleged disability due to lower back pain, high blood pressure, carpal tunnel syndrome, and depression.  (Tr. 69, 121, 125.)

After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: problems with her cervical and lumbar spine, hypertension, and obesity.  (Tr. 13–14.)  The ALJ determined that Plaintiff's claimed impairments of depression, history of alcohol abuse, and condition after a right wrist fracture were non-severe.  (Tr. 14.)  The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 14.)

The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work, except that, as a result of obesity and cervical and lumbar spine problems, Plaintiff was limited to lifting twenty pounds occasionally and lifting and carrying ten pounds frequently.  (Tr. 14.)  The ALJ also determined that Plaintiff would require a sit/stand option, sitting up to one hour at a time and standing up to fifteen minutes at a time.  (Tr. 14.)  Further, Plaintiff can sit and stand for a total of eight hours a day.  (Tr. 14.)  In formulating Plaintiff's RFC,

the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not fully credible.  (Tr. 17.)

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform her past relevant work as a survey worker, telephone solicitor, telephone answering service operator, customer service representative, service observer, personnel recruiter, and appointment clerk.  (Tr. 17–18.)  Accordingly, the ALJ found Plaintiff not disabled.  (Tr. 18–19.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a).  Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the

claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience.  20 C.F.R. § 416.920(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.  *Keeton*, 21 F.3d at 1066.  The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the

correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ failed to use the special technique in evaluating Plaintiff's mental impairments; and (2) the ALJ's RFC determination failed to include Plaintiff's limitations in handling and fingering in her dominant right hand.  For the reasons that follow, only Plaintiff's first contention warrants reversal.

### A.    Special Technique for Evaluating Mental Impairments

"Agency regulations require the ALJ to use the 'special technique' dictated by the [Psychiatric Review Technique Form] PRTF for evaluating mental impairments."  *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005); 20 C.F.R. § 404.1520a (effective June 13, 2011). Utilization of the special technique requires separate evaluations concerning how the claimant's mental impairment impacts four functional areas:  "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation."  *Moore*, 405 F.3d at 1213– 14; 20 C.F.R. § 404.1520a(c)(3).  "The ALJ is required to incorporate the results of this technique into the findings and conclusions."  *Moore*, 405 F.3d at 1213–14; *see* 20 C.F.R. § 404.1520a(e)(4).

The Eleventh Circuit has explained that "where a claimant has presented a colorable claim of mental impairment, the social security regulations require the ALJ to complete a PRTF and append it to the decision, or incorporate its mode of analysis into his findings and conclusions. Failure to do so requires remand."  *Moore*, 405 F.3d at 1214 (holding that when a claimant presents a colorable claim of mental impairment, ALJ's failure to comply with PRTF regulations requires remand); *Mills v. Comm'r Soc. Sec.*, No. 15-12818, 2016 WL 4361933, *3 (11th Cir. Aug. 16, 2016) (same); *Hill v. Sullivan*, 924 F.2d 972, 975 (10th Cir. 1991) (same); *Montgomery v. Shalala*,

30 F.3d 98, 100 (8th Cir. 1994) (same); *Stambaugh v. Sullivan*, 929 F.2d 292, 296 (7th Cir. 1991) (same). Accordingly, if Plaintiff presented a colorable claim of mental impairment, "the ALJ must either complete the PRTF or explicitly analyze the four factors within the decision." *Volley v. Astrue*, No. 1:07-CV-0138-AJB, 2008 WL 822192, *19 (N.D. Ga. Mar. 24, 2008).

Here, Plaintiff presented a colorable claim of mental impairment. On July 9, 2014, Maria E. Jimenez, Psy.D. of the Hope Counseling Center, a consulting psychologist, evaluated Plaintiff and concluded that Plaintiff "appears to meet criteria for Alcohol Use Disorder, Moderate and Other Specified Depressive Disorder given reported symptoms and clinical observations." (Tr. 533.) Dr. Jimenez further opined that Plaintiff's symptoms "appear to be mildly to moderately impacting activities of daily living, vocational performance, and interpersonal interactions." (Tr. 533.) Thus, the ALJ mischaracterized Dr. Jimenez's consultative examination when he stated that the examination "found the claimant's symptoms did not meet the criteria." (Tr. 17.)

However, the ALJ correctly noted that the Florida Disability Determination Services' consulting psychologists, Eric Wiener, Ph.D. and David Clay, Ph.D. "found the claimant's alleged depression non-severe." (Tr. 17, 74–76, 112–14.) Considering Plaintiff's medical records and using the special technique provided by the PRTF for evaluating mental impairments, Dr. Clay found that Plaintiff:

> may experience some difficulties in the capacity for independent, appropriate, and effective ADL functioning, social interactions, and concentration, persistence, and pace on a sustained basis. [Plaintiff's] limitations in personal care tasks, cooking, cleaning, shopping, traveling in public, paying bills, maintaining a residence, getting along with others, initiating social interactions, actively participating in group activities, interacting with the public, responding appropriately to authority figures, and working cooperatively with coworkers is considered mild in nature.

(Tr. 75.) Dr. Clay further opined that "[Plaintiff's] limitations appear to be primarily related to the alleged physical ailments, not mental MDI." (*Id.*) Dr. Wiener affirmed Dr. Clay's findings and conclusions (Tr. 113), and further found that Plaintiff did not indicate that her condition had

worsened and did not list any mental treatment or medications in the forms she submitted to Florida Disability Determination Services, when she sought reconsideration. (Tr. 101–02.) The ALJ gave the conclusions of Drs. Clay and Wiener significant weight. (Tr. 17.)

Nevertheless, given Plaintiff's colorable claim of mental impairment, the ALJ was required to "complete a PRTF and append it to the decision, or incorporate its mode of analysis into his findings and conclusions." *Moore*, 405 F.3d at 1214. The ALJ neither completed the PRTF, appended it to the decision, nor incorporated its mode of analysis into his findings and conclusions. As a result, the ALJ failed to apply and utilize the correct legal standards and failed to give the Court sufficient reasoning for determining that he conducted the proper legal analysis.

The Commissioner concedes the ALJ erred in failing to use the special technique, but maintains that the error is harmless. (Dkt. 19.) When an "incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand." *Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008). Thus, if the ALJ errs, the Court must determine whether the error was harmless, meaning "the correct application would not contradict the ALJ's ultimate findings." *Miller v. Barnhart*, 182 F. App'x 959, 964 (11th Cir. 2006); *Hunter v. Comm'r Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015).

According to the Commissioner, the ALJ gave the consulting physicians' conclusions significant weight, the consulting physicians used the special technique, and substantial record evidence supports the finding that Plaintiff's mental impairment was not severe. (Dkt. 19.) The Commissioner's argument is similar to the argument asserted by the Commissioner in *Moore*, 405 F.3d 1208. There, the Eleventh Circuit explained:

> The Commissioner argues, however, that remand is unnecessary as it would require no more than the ALJ's rote completion of the

PRTF. We cannot agree. The ALJ failed to even analyze or document Moore's condition in two of the PRTF's functional areas: social functioning and prior episodes of decompensation. Because the ALJ's decision lacks consideration of these factors and their impact on his ultimate conclusion as to Moore's RFC, we cannot even evaluate the Commissioner's contention that the ALJ's error was harmless.

Furthermore, the fact that the ALJ complied with the PRTF method and regulations when he first evaluated Moore's claim in 1996, prior to remand, is not sufficient to excuse his failure to do so here.

*Moore*, 405 F.3d at 1214.

Likewise, here, the Commissioner did not perform evaluations concerning how the Plaintiff's mental impairment impacts her activities of daily living, social functioning, concentration, persistence, or pace, or episodes of decompensation. *See* 20 C.F.R. § 404.1520a(c)(3). The ALJ was required to perform this evaluation of the four functional areas and incorporate his analysis into his findings and conclusions. *Id.* § 404.1520a(e)(4). Neither 20 C.F.R. § 404.1520a(e)(4) nor the governing Eleventh Circuit authority support delegation of this evaluation and analysis to the Florida Disability Determination Services' consulting psychiatrists. *See Volley*, 2008 WL 822192, **18–20 (rejecting the Commissioner's argument that ALJ's incorporation of the State agency psychologists' evaluations into the ALJ's decision complies with the applicable regulations and remanding for an evaluation of plaintiff's mental impairment in accordance with the procedures provided in 20 C.F.R. § 404.1520a).

Further, the ALJ mischaracterized the consultative examination when he explained that the examination "found the claimant's symptoms did not meet the criteria." (Tr. 17.) Given the mischaracterization, the absence of the PRTF, and the omission of an evaluation of the PRTF factors' impact on the ALJ's ultimate conclusion as to Plaintiff's RFC, the extent of the ALJ's review and careful evaluation is unclear. As a result, the Court cannot "evaluate the Commissioner's contention that the ALJ's error was harmless," and the case must be remanded to

the ALJ for an evaluation of Plaintiff's mental impairment that complies with the applicable regulations. *Moore*, 405 F.3d at 1214.

### B.       Consideration of Plaintiff's Right Hand Impairment

Plaintiff maintains that the ALJ erred by failing to include Plaintiff's limitations in handling and fingering in her dominant right hand in the RFC assessment.  The RFC is "an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)).  The ALJ considers the limiting effects of all the claimant's impairments, even those that are not severe, in determining the RFC.  20 C.F.R. § 404.1545(a)(2).  The final responsibility for deciding the RFC is reserved to the Commissioner.  *Id.* § 404.1527(d)(2).

The ALJ is not required to specifically refer to every piece of evidence in his assessment and decision concerning Plaintiff's RFC, so long as his decision reflects that he considered Plaintiff's medical condition as a whole.  *Herron v. Comm'r Soc. Sec.*, 649 Fed. Appx 781, 783, 786–87 (11th Cir. 2016) (stating the "ALJ's RFC assessment was not required to account for every piece of evidence"); *see Tuggerson-Brown v. Comm'r Soc. Sec.*, 572 Fed. Appx 949, 952 (11th Cir. 2014) (explaining that the ALJ's statement that he "evaluated whether [claimant] had an 'impairment or combination of impairments' that met a listing and that he considered 'all symptoms' in determining her RFC" were "enough to demonstrate that the ALJ considered all necessary evidence").

Here, the ALJ did not err in considering Plaintiff's right hand impairment and assessing Plaintiff's RFC.  In his decision, the ALJ discussed Plaintiff's claims concerning her right hand. (Tr. 14.)  The ALJ summarized Plaintiff's medical records related to her condition as follows:

> In regards to the claimant's wrist fracture, records from St. Joseph's
> Hospital showed the claimant was seen on July 24, 2013 after a fall.

> The claimant complained of wrist and ankle pain.  X-rays of the wrist and ankle showed no acute fracture, dislocation or abnormalities.  She was accessed with acute sprain of the hand and ankle.  The claimant was prescribed Ibuprofen and released in stable condition.   It appeared that the alleged impairments did not significantly limit the claimant's ability to perform work related activities, thus the undersigned found them non-severe.

(Tr. 14) (internal record citations omitted).

According to Plaintiff's medical records, Plaintiff fell on stairs in July 2013 and was treated in the emergency room at St. Joseph's Hospital.  (Tr. 395–489.)  Plaintiff reported that she was having pain in her right toe, right ankle, and right hand.  (*Id.*)  She was diagnosed with having a sprain and contusion in her hand and with having a sprained ankle and contusion in her foot.  (*Id.*)  She was prescribed ibuprofen and was limited to lifting under five pounds and using crutches for one week.  (*Id.*)

After a motor vehicle accident in September 2013, Plaintiff also received treatment in the emergency room at St. Joseph's Hospital.  (Tr. 622–70.)  Plaintiff reported pain in her right hand and right wrist, among other areas.  (Tr. 622.)  Neither a fracture nor dislocation were found.  (Tr. 644, 645.)  Plaintiff's physicians found arthrosis of the CMC joint of the right thumb and noted a mild degenerative change of the CMC joint of the thumb.  (Tr. 645.)  Plaintiff's examination revealed tenderness in Plaintiff's right distal upper extremity, right wrist, and right hand carpal region.  (Tr. 671.)  She received a prescription for fourteen naproxen tablets for pain and was instructed to take the medication twice daily as needed.  (Tr. 645.)

Plaintiff reported that she was having pain in her right hand on February 3, 2015, during her appointment with her treating physician Emma B. Ocampo, M.D.  (Tr. 798–802.)  Dr. Ocampo and the assisting resident physician noted that Plaintiff was "aware of CTS diagnosis at least on the right hand."  (Tr. 798.)  Dr. Ocampo prescribed wrist splints and a continuation of Plaintiff's medical therapy.  (*Id.*)  Plaintiff had an electrodiagnostic study performed by Roberto Perez-

Millan, M.D. on March 2, 2015. (Tr. 809–11.) Dr. Perez-Millan found potential evidence of "bilateral median neuropathy at the wrist (CTS) involving sensor fibers bilaterally and to a lesser extent motor fibers on the right side only – (mild severity on the right side and very mild severity on the left side)." (Tr. 811.) He found "[n]o electrodiagnostic evidence to suggest a focal ulnar neuropathy; diffuse peripheral neuropathy, plexopathy, myopathy and/or cervical radiculopathy bilaterally." (*Id.*)

Although the ALJ did not address Plaintiff's right hand impairment or carpal tunnel condition when determining her RFC, the ALJ considered "the entire record," "all the evidence," and "all symptoms" in reaching his determination. (Tr. 11, 14.) Moreover, the ALJ correctly noted that he was required to "determine whether the claimant has a medically determinable impairment that is 'severe' or a combination of impairments that is 'severe' (20 C.F.R. § 404.1520(c) and 416.920(c))." (Tr. 12.) He concluded that Plaintiff does not have an "impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (Tr. 14.) Given these statements, under Eleventh Circuit precedent, "those statements are enough to demonstrate that the ALJ considered all necessary evidence." *Tuggerson-Brown*, 572 Fed. Appx at 952; *see also Wilson*, 284 F.3d at 1224–25 (holding that the ALJ's conclusion that the claimant did not have an impairment or combination of impairments listed in or medically equal to a listed impairment "constitutes evidence that he considered the combined effects of claimant's impairments").

Finally, to the extent Plaintiff cites the Eleventh Circuit standard for evaluating a claimant's subjective testimony regarding pain and other limitations (Dkt. 18 at 11), Plaintiff does not raise any argument as to how this standard pertains to her second issue on appeal. Therefore, Plaintiff's citation to the Eleventh Circuit's "pain standard" is insufficient to raise this issue for appeal. *See*

*Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("[A]n appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("A passing reference to an issue in a brief is not enough, and the failure to make arguments and cite authorities in support of an issue waives it.").

As the ALJ's decision properly reflects his consideration of all of the evidence and the RFC assessment is supported by substantial evidence, Plaintiff's second contention does not warrant reversal.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1. The decision of the Commissioner is **REVERSED** and the case is **REMANDED** under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.

2. The Clerk of the Court is directed to enter judgment consistent with this Order.

**DONE** and **ORDERED** in Tampa, Florida, on January 31, 2017.

_____

JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record